UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES E. WALKER,

        Plaintiff,

        v.

WEXFORD HEALTH SOURCES INC., et al.,

        Defendants.

No. 24 CV 9702

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff James Walker suffers from several health problems and is an inmate at Sheridan Correctional Center. He alleges that defendants violated his constitutional rights by ignoring his requests for medication and forcing him to wait an unreasonable amount of time to see a doctor. Walker has sued Wexford Health Sources, Inc., the private corporation that provides health services to inmates, two Wexford employees, and the warden at Sheridan along with other individuals employed by the Illinois Department of Corrections. Wexford moves to dismiss on the grounds that Walker has failed to adequately allege *Monell* liability against it. For the reasons discussed below, the motion is granted.

## I. Legal Standards

Federal Rule of Civil Procedure 12(b)(6) governs dismissals based on failure to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776

(7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a complaint's sufficiency, courts "accept as true all well-pled facts and make any reasonable inferences in the non-movant's favor." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022). However, I disregard "[t]hreadbare recitals" supported only by conclusory statements. *Iqbal*, 556 U.S. at 678.

## II.    Background

Plaintiff James Walker has been an inmate at Sheridan Correctional Center, a unit of the Illinois Department of Corrections, since 2021. [18] ¶ 3.[1] Walker suffers from chronic sinusitis, back pain due to arthritis, and gastrointestinal problems. [18] ¶ 3. His medical problems can be treated effectively through the prescription of cetirizine for relief from his sinusitis headaches, ibuprofen for relief from his back pain, and docusate for relief from his gastrointestinal problems. [18] ¶ 3.

Plaintiff has had difficulty receiving his medications since he arrived at Sheridan. [18] ¶ 16. Between December 2022 and November 2023, he was forced to wait 11 months to see a doctor and receive his prescription medications. [18] ¶ 17. During that time, Walker alleges that he made eight healthcare requests. [18] ¶ 17.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the first amended complaint, [18].

First, in December 2022, Walker made a treatment request to a nurse, who told Walker he would be referred to a doctor (but no referral was ever made). [18] ¶ 17(a). Second, in January 2023, plaintiff made the same request to another nurse, who also told him that he would be referred to a doctor (and no referral was ever made). [18] ¶ 17(b). Third, in April 2023, plaintiff asked another nurse to have his medications renewed. [18] ¶ 17(c). Fourth, also in April 2023, plaintiff asked a correctional officer to give the nurse his request for treatment (but no action was taken). [18] ¶ 17(d). Fifth, in May 2023, plaintiff made a repeated request to another correctional officer to see a nurse or physician (but no action was taken). [18] ¶ 17(e). Sixth, in June 2023, Walker personally placed a healthcare request in the request box (but no action was taken). [18] ¶ 17(f). Seventh, in July 2023, Walker placed a request for treatment in his cell door and it was collected by a correctional officer (but no action was taken). [18] ¶ 17(h). Eighth, the following day, another correctional officer took plaintiff's request for treatment (but no action was taken). [18] ¶ 17(i).

A few days after this eighth instance, Walker was seen by Wexford employee (and defendant) Richard Yenkong, who refused to prescribe him any of his desired medications. [18] ¶ 17(j). In September 2023, plaintiff spoke with Wexford employee (and defendant) Riliwan Ojelade, who assured him his medications would be renewed. [18] ¶ 17(k). Certain medications were prescribed that day but they were not made available to Walker until nearly two months later. [18] ¶ 17(k).

Plaintiff filed grievances challenging the denial of medical treatment, all of which were denied. [18] ¶ 19. Walker now alleges that certain Illinois Department of

3

Corrections employees, in addition to Yenkong, Ojelade, and Wexford, acted with deliberate indifference to his known medical conditions and thus violated his rights under the Eighth Amendment. Wexford moves to dismiss.[2]

## III.   Analysis

Under the Eighth Amendment, prison officials are responsible for providing healthcare to incarcerated individuals who cannot obtain healthcare on their own. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) (citing *Estelle v. Gamle*, 429 U.S. 97, 103–04 (1976)). To prove a violation of that right, a plaintiff must prove that a defendant actually knew of a serious health need and acted with deliberate indifference to his suffering. *Id.* (citing *Famer v. Brennan*, 511 U.S. 825, 843 (1994)). Denying or delaying appropriate treatment can violate the Eighth Amendment. *Id.*

Section 1983 grants a private right of action against a "person" who acts under color of state law to deprive another of federal rights. 42 U.S.C. § 1983. In *Monell v. Department of Social Services*, the Supreme Court held that a municipal government can be a proper defendant under § 1983. 436 U.S. 658, 701 (1978). The *Monell* standard also applies to claims against private corporations, such as Wexford. *See*

---

[2] In addition to his claim for deliberate indifference to requests for medical treatment, Walker also repeats his factual allegations from a related lawsuit that is currently pending before this court. *See* Second Amended Complaint, *Walker v. Miles et al.*, No. 23-128 (N.D. Ill. July 20, 2023). Walker alleges that inmates at Sheridan are required to stand outside in the medication line ("medline") on cold winter days for 30 to 40 minutes to receive their prescribed medications. [18] ¶¶ 11–15. This aggravates plaintiff's sinusitis. [18] ¶ 14.

*Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017).[3] To establish Wexford's liability , Walker must show that a constitutional violation was caused by (1) an express Wexford policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. *Howell*, 987 F.3d at 653.

Walker argues that his complaint adequately alleges the second line of *Monell* liability: a widespread practice. [61] at 5–6. There are no bright-line rules regarding the quantity, quality, or frequency of conduct needed to prove a widespread custom under *Monell*. *Howell*, 987 F.3d at 654. But proof of isolated acts of misconduct is insufficient; there must be a pattern or series of incidents to lay the premise of deliberate indifference. *Id.* (first citing *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003); and then citing *Cornfield v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993)); *see also Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (suggesting that three incidents do not amount to a persistent and widespread practice).

According to Walker, his "eight healthcare requests over eight months" before being seen by a provider support a reasonable inference that Wexford had a practice of delaying medical care. [61] at 4–5. But Walker does not allege that any of these

---

[3] The Seventh Circuit does not apply respondeat superior liability to private corporations. *See Howell*, 987 F.3d at 653. Plaintiff's argument that Wexford should be subject to respondeat superior liability (rather than only *Monell* liability) is preserved, but rejected as contrary to binding appellate authority in this circuit. *See* [61] at 4 n.1.

eight requests were made to a Wexford employee.[4] Even if they were, Walker's individualized experience here is insufficient to infer a pattern of deliberate indifference by Wexford. While it is possible for an incarcerated plaintiff to adequately plead *Monell* liability alleging only their individual experiences, the "more common paths" toward *Monell* liability involve proof of a widespread practice affecting other individuals as well. *See Howell*, 987 F.3d at 655 (noting that a "custom theory will be more persuasive if a plaintiff can show that the defendant … treated other, similarly situated patients in similar unconstitutional ways"). An individual inmate's experience may be an isolated one and Walker's eight requests, in different forms and through different IDOC employees, do not suggest a Wexford-driven pattern of delay.

Plaintiff's cited cases are distinguishable. For example, in *Ford v. Wexford Health Sources, Inc.*, the plaintiff alleged several instances of delayed treatment by Wexford employees. 2013 WL 474494, at *6–7 (N.D. Ill. Feb. 7, 2013) (noting how each of the three Wexford employees named in the complaint personally interacted with the plaintiff). The court cited over a dozen paragraphs in the complaint that

---

[4] To the contrary, these requests were made to corrections officers and nurses employed by the Department of Corrections. *See* [18] at 17. Though Walker alleges that "the ultimate decision to deny requested treatment" may have been made by physicians employed by Wexford, [18] ¶¶ 7–8, this allegation alone is insufficient for the court to draw a reasonable inference that Wexford caused the delay. The incidents occurring between December 2022 and July 2023 name non-Wexford employees. Wexford cannot be held liable for any constitutional violations committed by these individuals, and if anything, the IDOC employees' inaction on Walker's requests suggests that Wexford was not on notice of Walker's needs. Wexford's deliberate indifference cannot be inferred from those allegations.

alleged a widespread practice *among Wexford employees* of delaying medical treatment. *Id.* at *9.

Similarly, in *Baker v. Wexford Health Sources, Inc.*, the plaintiff alleged delayed medical treatment by two Wexford employees occurring on at least six separate occasions. 2014 WL 1346613, at *2 (N.D. Ill. Apr. 4, 2014). These six visits were all connected to the plaintiff's allegation that Wexford had a policy of denying or delaying requests for referrals to outside specialists. *Id.* at 5.

Though Walker "is not required to use magic words" to allege *Monell* liability for a widespread practice, *see Martinez v. Hooper*, 148 F.3d 856, 858–59 (7th Cir. 1998), Walker must allege something to infer that Wexford had an entrenched custom to delay medical care. His two interactions with Wexford's Yenkong and Ojelade are insufficient to transform isolated acts of misconduct into an unconstitutional corporate policy. *See Howell*, 987 F.3d at 654.

Between the two Wexford-related incidents that Walker complains of (his interaction with defendant Yenkong in July 2023 and his interaction with defendant Ojelade in September 2023), and the fact that Walker does not allege the existence of similarly situated inmates, it is not reasonable to infer that Wexford maintained a widespread policy of denying or delaying treatment. There are no facts that plausibly suggest a *Monell* violation by Wexford. Accordingly, Walker's claim against Wexford must be dismissed.

In his opposition brief, Walker also seeks leave to add Wexford to the allegations related to the "medline" policy. In another one of Walker's cases pending

before this court, Wexford (and its employees) moved for summary judgment on this same "medline" claim—and plaintiff did not oppose the motion—on the grounds that there was no evidence of the Wexford defendants' personal involvement (or policy-level complicity) in the alleged constitutional violation. Motion for Summary Judgment, *Walker v. Miles et al.*, No. 23-128 (N.D. Ill. Dec. 20, 2024). I then granted Walker's motion to dismiss the Wexford defendants with prejudice. Minute Entry, *Walker v. Miles et al.*, No. 23-128 (N.D. Ill. Feb. 20, 2025).

Plaintiff cannot reopen that issue in this case. The issue had been litigated on the merits in the earlier case. Because there remain pending claims in the 2023 *Walker v. Miles* case, any relief from the grant of summary judgment in Wexford's favor in that case must come in that case.[5]

## IV.    Conclusion

Defendant Wexford's motion to dismiss, [47], is granted. Walker's claims against Wexford are dismissed with prejudice.[6]

ENTER:

_Manish S. Shah_____

Manish S. Shah

Date:  June 11, 2026                                         United States District Judge

---

[5] Walker notes that he re-pled the "medline" allegations because the present lawsuit deals with a later time period than *Miles*. [61] at 8. But there are no alleged facts pertaining to this later time period that meaningfully differ from those pled in the earlier lawsuit. The "medline" claim arises from the same set of facts and cannot be split across two cases involving plaintiff's incarceration at Sheridan.

[6] Dismissal with prejudice is appropriate because plaintiff has already amended his complaint in this case and any additional amendment would be futile. The facts alleged in the complaint cannot lay the foundation for a *Monell* claim against Wexford.